**STATE OF WEST VIRGINIA**

**SUPREME COURT OF APPEALS**

**AMANDA V. BLACK,**
**Claimant Below, Petitioner**

**vs.)    No. 19-0983** (BOR Appeal No. 2054301)
                          (Claim No. 2018025256)

**SAME OLD PLACE, INC.,**
**Employer Below, Respondent**


**MEMORANDUM DECISION**

Petitioner Amanda V. Black, by Counsel Anne L. Wandling, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). Same Old Place, Inc., by Counsel James W. Heslep, filed a timely response.

The issue on appeal is compensability of the claim. On May 31, 2018, the claims administrator rejected the claim. The Workers' Compensation Office of Judges ("Office of Judges") reversed the claims administrator's Order and held the claim compensable under the diagnosis of post-traumatic stress disorder ("PTSD") in a decision dated June 5, 2019. This appeal arises from the Board of Review's Order dated October 10, 2019, in which the Board of Review reversed and vacated the decision of the Office of Judges. The Board of Review reinstated the claims administrator's May 31, 2018, Order which rejected the claim.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Black was employed by Same Old Place, Inc., as a cashier. She alleged that on May 5, 2018, she suffered a PTSD event when she was held at gunpoint. A report from the Cabell County Sheriff's Office was completed by Cpl. W. L. Templeton on May 5, 2018, in which he reported an armed robbery occurred at the gaming parlor. Ms. Black reported that a white male arrived at the bar at approximately 6:09 p.m. and buzzed the door to enter the establishment. Once inside, the robber told Ms. Black that he wanted all of the money. She in turn told the man that such was nothing to joke about. He told her that he was not joking and asked her to put her hands

1

up. Ms. Black then saw a short shotgun. The robber demanded that she place her hands on the counter and empty a trashcan. The robber shoved the money into his hoodie sweatshirt. Meanwhile, Haley Bellomy arrived and began buzzing the door. Ms. Black told Cpl. Templeton that the robber grabbed her keys and stole her vehicle, as well as $623. When he ran out the door, he knocked Ms. Bellomy backward into the railing.[1]

Ms. Black signed an Employees' and Physicians' Report of Occupational Injury or Disease on May 8, 2018, in which she reported that she had been held at gunpoint and had her vehicle stolen. Ms. Black initially sought treatment at MedExpress. She reported problems sleeping, eating, and leaving her house. She told the staff at MedExpress that she had been experiencing these symptoms since being robbed. She was assessed with PTSD, unspecified, as a possible diagnosis and further evaluation by a mental health professional was required regarding anxiety versus situational stress verses PTSD. A referral to a psychiatrist was submitted for approval for workers' compensation. Ms. Black was prescribed medication for her symptoms and advised to return on May 11, 2018, or sooner, if her symptoms changed. Ms. Black returned to MedExpress on May 11, 2018, for a follow-up for her anxiety. She reported that she was still experiencing night terrors and feelings of suffocation. She was assessed with anxiety. She was prescribed medication and instructed to return in one week.

Same Old Place, Inc., subsequently completed its First Report of Injury, submitted by Cindy Null, Manager. Ms. Null noted that Ms. Black had not reported any physical injury. The report stated that she had permitted entry into the facility to an individual who had walked onto the facility's property and was obscuring his face. Both actions violated the respondent's policies. It was also reported that Ms. Black had not activated the facility's panic alarm during or after the robbery.

Ms. Black returned to MedExpress on May 18, 2018, for follow-up for anxiety. She stated that she felt about the same as before and continued to experience sleep interruption. She indicated that her prescribed medicine had helped her sleep, but she was sleep walking and having a hard time waking up. As a result, she was taking the medication every other day. Ms. Black reported that her anxiety peaks with crowds and she prefers to stay at home. She was assessed with anxiety reaction and advised to get plenty of rest. It was recommended that she follow-up with a specialist for further evaluation.

---

[1] The record includes a DVD containing black and white video surveillance of the video gaming parlor on May 5, 2018, for the period from 6:10 p.m. through 6:22 p.m. Between 6:12 p.m. and 6:13 p.m., a couple of people can be noted exiting the door. A female with long hair can be seen moving about the establishment, appearing to be cleaning. At 6:16:27 p.m., an individual in a black hooded sweatshirt entered the door from which other people had previously exited. Most of the view is obscured by a soda machine until 6:16:51 p.m., when the person in the black hoodie and white hat went to the counter with what appears to be a gun or glove in his right hand. He can be seen gathering and sorting what appeared to be cash. The female cannot be seen. At 6:20:22 p.m., a female appears to reach to get a new plastic shopping bag, while the perpetrator stood by the door. At 6:20:39 p.m., he exited the door and another female immediately entered.

By Order of the claims administrator dated May 31, 2018, Ms. Black's application for workers' compensation benefits was rejected pursuant to West Virginia Code § 23-4-1f, that states that no alleged injury shall be recognized as a compensable injury which was solely caused by nonphysical means and which did not result in any physical injury to the person claiming benefits. Ms. Black, without the benefit of counsel, timely protested the claims administrator's decision. Ms. Black noted in her protest letter that her condition manifested by demonstratable physical symptoms, including sleep disturbances, nightmares, flash backs, jumpiness, headaches, vomiting, irritability, anger, and fatigue.[2]

Ms. Black subsequently retained legal counsel and testified at deposition in support of her protest on September 24, 2018. She testified that during her shift on May 5, 2018, she heard a buzz at the door and stopped what she was doing to check the video camera. She saw an individual wearing a hat shaking the rain off of his hoodie, but she could not clearly see his face. She then hit the button to admit him, and then he pulled the drawstring so that his face could not be seen when he came in the door. All she could see was his nose and mouth. The individual said, "This is a holdup, give me your money." Ms. Black thought he was joking, and she told him that it was not funny. She then heard the cocking of a gun, and he told her that it was not a joke. She was asked to keep her hands visible and not to move. As he came around the counter, he stuck the gun in Ms. Black's back and told her to open the cash drawer. She indicated that he started yelling at her, because he thought she was going to push a panic button. Ms. Black promised not to hit the panic button and opened the cash drawer. Another person buzzed the door, and the robber told Ms. Black that he did not want to have to hurt anyone. He took money out of the beer till. She testified that after he got the money, he threw it onto the floor and told her to put her hands up. She was told that if she called the police or pushed the panic button, he would shoot her. Ms. Black testified that she was afraid the robber might do something to the woman who was at the door, so she told him to wait until she left. He kicked the door open and knocked the lady backward against a rail and then left in Ms. Black's 1998 Ford Explorer. The Cabell County Sheriff's Office was eventually notified and arrived at the scene. The Sheriff's Office indicated that the establishment had been previously robbed with the same scenario. Ms. Black testified that she was unfamiliar with the prior robbery. She remained at work until 11:00 p.m., when Terry Newhouse drove her home. Her vehicle was recovered approximately two weeks later.

Ms. Black testified that following the incident, she experienced fear, anxiety, and sleep disturbance. When her symptoms worsened and she was having nightmares, she sought treatment at MedExpress in Huntington, West Virginia. She went back to MedExpress once a week for three weeks, until they told her to get help from physicians at Prestera. She testified that she did not want to leave her home because she was unable to handle crowds. She was especially anxious about people being behind her. Since May 5, 2018, she constantly fidgeted and shook. Ms. Black testified that her medications helped with her symptoms. However, her doctors at Prestera told her

---

[2] In her protest to the claims administrator's Order, Ms. Black listed physical symptoms which are identical to the symptoms reported by the claimant in *United Parcel Service, Inc. v. Hannah*, No. 11-1527 (W. Va. Supreme Court, October 25, 2013) (memorandum decision). Ms. Black later testified that she used Mr. Hannah's case as a template after researching the issue.

that she was not ready to return to work. She indicated that she received psychiatric treatment between 2002 and 2003, following the death of a child. She sought treatment for depression until about 2004 or 2005, at which time she got better. She testified that she had no other problems similar to what she had after the robbery. She also stated that she was bruised where the robber put the gun to her back, but she did not see a doctor about her bruise. Upon cross-examination, Ms. Black was asked if she had ever been subjected to any kind of similar violence other than the robbery to which she replied that she had an abusive husband in 1999, but she did not seek counseling or medical help.

A Workers' Compensation Attending Physician's Benefits form completed and signed by Christina Goldstein, M.D., was submitted on October 23, 2018. Dr. Goldstein reported that Ms. Black was not at her maximum degree of medical improvement. The date for a return to full duty work was unknown. Dr. Goldstein reported that Ms. Black was disabled from May 5, 2018, to December 5, 2018.

By decision dated June 5, 2019, the Office of Judges reversed the claims administrator's Order and held the claim compensable for PTSD. The Office of Judges characterized Ms. Black's incident as "extreme" and concluded that her scenario fell within the same analysis as *Hannah*, thus invalidating application of West Virginia Code § 23-4-1f.[3] The respondent appealed the decision of the Office of Judges.

In an Order dated October 10, 2019, the Board of Review found that the Office of Judges' final analysis and conclusions of law were clearly wrong in view of the reliable, probative and substantial evidence on the whole record. The Office of Judges found that the claim is similar enough to *Hannah* to hold the claim compensable. However, the Board of Review concluded that *Hanna* is very different than Ms. Black's claim. The Board of Review found that Ms. Black's claim does not establish the physical component necessary in order to hold a claim compensable. No shots were fired in the presence of Ms. Black. She was not abducted at gunpoint. She was not forced to drive a vehicle, she was not held hostage for thirty minutes, and she did not run for cover during a fatal gun battle. The Board of Review found that Mr. Hannah's claim is not the type of claim that is barred by West Virginia Code § 23-4-1f. Mr. Hannah was detained by a mentally disturbed man who was suicidal, assaulted by the blast of a gun, and stripped of his keys.

---

[3] In *United Parcel Service, Inc. v. Hannah*, No. 11-1527 (W. Va. Supreme Court, October 25, 2013) (memorandum decision), a man with a gun hijacked the UPS truck that Mr. Hannah was driving. Mr. Hannah was held at gunpoint while he drove for thirty minutes. The hijacker shot the gun right beside Mr. Hannah and threatened his life. When the hijacker saw a police cruiser, he ordered Mr. Hannah to pull over, and he took the truck keys away from Mr. Hannah. The hijacker fired several rounds and was fatally shot by a law enforcement officer. Following his incident, Mr. Hannah filed for workers' compensation benefits alleging physical and mental injuries. In *Hannah*, the West Virginia Supreme Court of Appeals addressed the applicability of West Virginia Code § 23-4-1f to Mr. Hannah's claim and concluded that Mr. Hannah received a personal injury in the course of and resulting from his employment. The Court concluded that Mr. Hannah's claim for PTSD was not barred by West Virginia Code § 23-4-1f, because Mr. Hannah's condition was manifested by demonstrable physical symptoms, including sleep disturbance and jumpiness.

Subsequently, the West Virginia Supreme Court of Appeals affirmed the Board of Review's Order holding the claim compensable, noting the physical nature of Mr. Hannah's incident.

Following the *Hannah* case, this Court addressed West Virginia Code § 23-4-1f in *Mollohan v. Ecolab*, No. 15-0622 (W. Va. Supreme Court, June 22, 2016) (memorandum decision). Ms. Mollohan testified that she saw her life flash before her eyes when a fire broke out and she called on the radio to get everyone out of the building. She had nausea, vomiting, sleep disturbances, depressed mood, and poor concentration. The Court found "Ms. Mollohan failed to show a physical means sufficient enough to overcome the mandate in West Virginia Code § 23-4-1f." After considering the case law and the evidence, the Board of Review concluded that Ms. Black's claim is analogous to the *Mollohan* case and is therefore barred by West Virginia Code § 23-4-1f. The final decision of the Office of Judges dated June 5, 2019, was reversed and vacated. The Board of Review reinstated the May 31, 2018, Order of the claims administrator, which rejected the claim.

After review, we agree with the conclusions of the Board of Review. The evidence presented in this case does not present the extreme events set forth in *Hannah*. The facts of *Hannah* are unique and the compensability finding in that case rested on the assaultive force of the gunshot and the physical abduction of the driver. The facts presented in the instant case are far different. In fact, Ms. Black never made any allegation of physical injury during the incident until her deposition. Because the facts of this case are easily distinguishable from *Hannah*, the Board of Review did not err in concluding that Ms. Black failed to establish by a preponderance of the evidence that the claims administrator improperly rejected her claim.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it so clearly wrong based upon the evidentiary record that even when all inferences are resolved in favor of the Board of Review's findings, reasoning and conclusions, there is insufficient support to sustain the decision. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: February 19, 2021**

**CONCURRED IN BY:**
Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead

**DISSENTING**:
Justice John A. Hutchison
Justice William R. Wooton